## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**WESTCHESTER FIRE INSURANCE
COMPANY, et al.,**

     **Plaintiffs,**

**v.**                                                    **Case No: 5:24-cv-446-JSM-PRL**

**M&C EXPRESS TRANSPORT, INC.,
et al.,**

     **Defendants.**

_____

### ORDER

This cause comes before the Court on a Renewed Motion for Clerk's Default Against Valued Commodities Transportation, Inc. ("Valued Commodities") filed by Plaintiff Westchester Fire Insurance Company ("Westchester"). (Doc. 49). For the reasons explained below, Westchester's renewed motion is due to be granted.

**I.    BACKGROUND**

Westchester filed a complaint for declaratory relief against Valued Commodities and five other defendants on August 23, 2024. (Doc. 1). Previously, Westchester moved for entry of clerk's default against Valued Commodities for failing to timely respond to the complaint or otherwise defend, contending that it properly effectuated service of process on Valued Commodities via substituted service through the Florida Secretary of State under Florida law. (Doc. 39 at pp. 3-4).

On April 24, 2025, the Court denied without prejudice Westchester's motion for entry of clerk's default against Valued Commodities due to insufficient briefing on the matter,

specifically, because Westchester failed to establish that it properly served Valued Commodities through substituted service of process in accordance with Florida law. (Doc. 44 at p. 6). Among the deficiencies identified in Westchester's motion for entry of clerk's default, the Court noted that its motion failed to include a memorandum of law providing a statement of the basis for relief with an analysis to support its request for entry of default against Valued Commodities; Westchester did not explain how it attempted service on Valued Commodities in accordance with each section of Fla. Stat. § 48.081 and why substitute service under Fla. Stat. § 48.161 was the appropriate method of service; and it did not sufficiently describe the service efforts or explain how such efforts were adequate under Fla. Stat. § 48.161(1)-(2) to allow the Court to review service on Valued Commodities and conclude whether default was warranted against a defendant who was allegedly concealing its whereabouts. (Doc. 44 at pp. 6-8). Despite these deficiencies, the Court allowed Westchester to file a renewed motion for entry of clerk's default against Valued Commodities to address such deficiencies, or alternatively, to re-serve Valued Commodities within 30 days of the entry date of the Court's April 24, 2025 Order. (*Id.* at p. 8).

Westchester now files the instant renewed motion for entry of clerk's default against Valued Commodities, asserting that it properly served Valued Commodities via substituted service through the Florida Secretary of State in accordance with Florida law. (Doc. 49). To date, Valued Commodities has not filed a response to the complaint or requested an extension of time to respond.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *See* Fed. R. Civ. P. 55(a). However, before directing the clerk to enter default under Rule 55(a), the Court must determine whether a plaintiff effected service of process on the defaulting party because, without effective service, there is no jurisdiction and no obligation to answer or otherwise defend. *See Kelly v. Florida*, 233 F. App'x 883, 884-85 (11th Cir. 2007); *Chambers v. Halstead Fin. Servs., LLC*, No. 2:13-cv-809-FTM-38, 2014 WL 3721209, at *1 (M.D. Fla. July 28, 2014) (citation omitted).

Under Federal Rule of Civil Procedure 4, a corporate defendant may be served by "delivering a copy of the summons and . . . complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service process." *See* Fed. R. Civ. P. 4(h)(1)(B). A corporate defendant may also be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" *See* Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1). "The serving party has the burden of showing that the opposing party was properly served." *Spy Optic Inc. v. Pattar Enter., Inc.*, No. 6:16-cv-1541, 2017 WL 8893758, at *1 (M.D. Fla. Oct. 4, 2017) (citation omitted).

In the state of Florida, service of process on domestic corporations is governed by Fla. Stat. § 48.081. *See generally* Fla. Stat. § 48.081. Under Florida law, service must first be attempted on the corporation's registered agent. *See* Fla. Stat. § 48.081(2). If unsuccessful, a plaintiff must attempt to serve the individuals identified in subparagraph (3), which includes

- 3 -

any person listed publicly on the corporation's latest annual report, the chair of the board of directors, the president, the vice president, the secretary, or the treasurer. *See* Fla. Stat. § 48.081(3). Then, if that is unsuccessful, a plaintiff may effect service on a defendant via substituted service of process through the Florida Secretary of State using the method described in Fla. Stat. § 48.161. *See* Fla. Stat. § 48.081(4).

Section § 48.161 provides the method for effecting substitute service. *See generally* Fla. Stat. § 48.161. In certain circumstances, substitute service of process may be effectuated under Florida law upon a nonresident or a party who conceals his or her whereabouts. *See EHR Aviation, Inc. v. Lawson*, No. 3:09-cv-210-J-32TEM, 2011 WL 46119, at *1 (M.D. Fla. Jan. 6, 2011) (citations omitted); Fla. Stat. § 48.161. However, "before using the substitute service statute[,]" the plaintiff must show that "due diligence was exercised in attempting to locate and effectuate personal service on the party." *See* Fla. Stat. § 48.161(2). The plaintiff is considered to have used due diligence if it (1) "[m]ade [a] diligent inquiry and exerted an honest and conscientious effort appropriate to the circumstances to acquire the information necessary to effectuate personal service"; (2) "reasonably employed the knowledge at the party's command, including knowledge obtained pursuant to paragraph (a)"; and (3) "[m]ade an appropriate number of attempts to serve the party[] . . . [under] the particular circumstances." *See* Fla. Stat. § 48.161(3), (4)(a)-(c).

Additionally, to effectuate proper substituted service of process on a defendant concealing its whereabouts under Fla. Stat. § 48.161, a plaintiff must provide sufficient evidence showing that the Secretary of State was properly served. Specifically, the plaintiff must: (1) serve the Secretary of State by providing them with a copy of the summons and complaint; (2) pay the requisite fee to the Secretary of State; (3) provide notice of service upon

the Secretary to the defendant by sending them a copy of the summons and complaint by registered or certified mail; and (4) file an affidavit of compliance within 40 days after the date of service on the Secretary of State, or within additional time if the court allows, that establishes that substituted service is proper under the section and that due diligence was exercised in attempting to effect personal service on the party before using substituted service. *See* Fla. Stat. § 48.161(1)-(2).

"Valid substituted service on the Secretary of State requires strict compliance with the statutory provisions for substituted service." *City of Jacksonville v. Arrigato, Inc.*, No. 3:10-cv-211-J-32MCR, 2010 WL 3069135, at *1 (M.D. Fla. Aug. 4, 2010) (citing *George Fisher, Ltd. v. Plastiline, Inc.*, 379 So. 2d 697, 699 (S.D. Fla. 1980)); *see Great Am. Assurance Co. v. Walters*, No. 3:15-CV-1008-J-39JBT, 2016 WL 9526443, at *2 (M.D. Fla. Apr. 14, 2016) ("Because the statute allowing substituted service is an exception to the general rule requiring a defendant to be personally served, there must be strict compliance with the statutory requirements so as to protect due process guarantees.") (quoting *Hernandez v. State Farm Mut. Auto Ins. Co.*, 32 So. 3d 695, 698 (Fla. Dist. Ct. App. 2010)). As "[t]he courts have consistently observed that statutes relating to substituted service of process (in lieu of personal service of process) must be strictly construed[,] . . . the burden of proof to sustain the validity of substituted service of process rests upon the person seeking to invoke the provisions of such statutes." *See Hughes v. American Tripoli, Inc.*, No. 2:04-cv-485-FTM-29DNF, 2007 WL 2071529, at *1-2 (M.D. Fla. July 17, 2007) (citing *Elmex Corp. v. Atlantic Fed. Sav. & Loan Ass'n of Ft. Lauderdale*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)).

### III.  DISCUSSION

Westchester seeks to deem substitute service of process through the Florida Secretary of State as complete and, therefore, moves for entry of clerk's default against Valued Commodities. (Doc. 49). Westchester explains that it has not been able to successfully serve Richardson Boco ("Boco"), who is Valued Commodities' only registered agent, and that he is the only person who can accept service on behalf of Valued Commodities because the company has never filed an annual report. (*Id.* at pp. 3, 6; Doc. 49-1). Westchester's process servers attempted to serve Boco at his last known address, which corresponded to Valued Commodities' business address, six separate times from December 2024 through January 2025, but he was not present on any of these occasions. (Doc. 49 at pp. 4-5; Doc. 49-3 at ¶¶ 9-17; Doc. 49-2; Doc. 49-4). Westchester further avers that one of its process servers attempted to serve Boco at the address listed on his driver's license from two traffic citations on February 18, 2025, and was unable to do so. (Doc. 49 at p. 6; Doc. 49-3 at ¶¶ 19-20). The process server later made another attempt to serve Boco at a new business location that he was associated with in Georgia on May 1, 2025, but again was unsuccessful. (Doc. 49 at pp. 8-9; Doc. 49-7). Westchester's efforts to effectuate service on Boco, which consisted of conducting comprehensive searches, are detailed in the exhibits to its renewed motion, including the affidavit of compliance signed by counsel under the penalty of perjury. (Doc. 49-1, 49-2, 49-3, 49-4, 49-5, 49-6, 49-7, 49-8, & 49-9).

Because Westchester has established that it was unsuccessful in serving Boco, it may effect service on Valued Commodities via substituted service of process through the Florida Secretary of State pursuant to Fla. Stat. § 48.161. However, before using this substitute service statute under Florida law, Westchester must show that "due diligence was exercised in

attempting to locate and effectuate personal service" on Boco. *See* Fla. Stat. § 48.161(2), (3), (4)(a)-(c).

Here, Westchester has demonstrated that it exercised due diligence to locate and attempt service on Boco before using substituted service. First, Westchester made a diligent inquiry and exerted an honest and conscientious effort. Indeed, it attempted to serve Boco at various addresses, including Boco's registered-agent address for the company, Boco's address listed on his driver's license, and a business address associated with Boco in Georgia. (Doc. 49 at pp. 4-6; Doc. 49-3 at ¶¶ 9-17, 19-20; Doc. 49-2; Doc. 49-4; Doc. 49-7). As Westchester explains, it exerted extensive effort by conducting a public records search on Westlaw, a skip-trace search, a court records search in the state of Florida, and a nationwide public records search. (Doc. 49 at pp. 4-8; Doc. 49-3 at ¶¶ 13, 17, 19). Westchester also retained a private investigator in an attempt to locate any additional addresses associated with Boco. (Doc. 49 at p. 9; Doc. 49-8; Doc. 49-9).

Second, Westchester reasonably employed the knowledge at their command by directing the process servers to attempt service at the business address, the address obtained by the court records search in the state of Florida, and the business address found from the nationwide public records search. (Doc. 49 at pp. 4-8; Doc. 49-3 at ¶¶ 8-20). Not only that, but the private investigator Westchester retained conducted surveillance on the two last known addresses for Boco. (Doc. 49 at p. 9; Doc. 49-8; Doc. 49-9).

Third, Westchester made an appropriate number of attempts to serve Boco, "taking into account the particular circumstances, during such times when and where such party is reasonably likely to be found, as determined through resources reasonably available to the party seeking to secure service of process." *See* Fla. Stat. § 48.161(4)(c). The number of

attempts to serve Boco is reasonable, particularly in light of the evidence establishing that Boco is beclouding his whereabouts. *See Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-cv-665-T-33EAJ, 2011 WL 3296812, at *4 (M.D. Fla. Aug. 2, 2011) ("A defendant who beclouds his whereabouts should not be entitled to benefit from the process server's consequent confusion.") (citation omitted). At this point in time, any additional attempts would be futile. For that matter, "[t]he rules governing service of process are not designed to create an obstacle course for [p]laintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." *See Verizon Trademark Servs., LLC*, 2011 WL 3296812, at *5 (citation omitted). Considering the circumstances presented here, Westchester has sufficiently demonstrated the requisite diligence in its attempts to locate Boco and effectuate service on him. *See, e.g.*, *Verizon Trademark Servs., LLC*, 2011 WL 3296812, at *5 (finding that plaintiff was warranted in its use of substituted service after multiple attempts to serve defendant at his home and after surveillance of defendant's home); *Gov't Emps. Ins. Co. v. Utter*, No. 6:23-cv-943-CEM-EJK, 2024 WL 1156544, at *1-2 (M.D. Fla. Mar. 18, 2024) (holding that plaintiffs were warranted in their use of substituted service after numerous attempts to serve the registered agent for each of the defendants at their business address and the registered agent's residential address).

Finally, Westchester has provided sufficient evidence showing that the Secretary of State was properly served in accordance with Fla. Stat. § 48.161. Pursuant to § 48.161(1), Westchester submitted the appropriate documents to effect service of process on Valued Commodities through the Florida Secretary of State. (Doc. 49-3 at ¶ 22). The Florida Secretary of State accepted service of process for Valued Commodities on February 18, 2025. (Doc. 49-3 at ¶ 23; Doc. 49-5); *see* Fla. Stat. § 48.161(1); *see also Prime Prop. & Cas. Ins. Co. v.*

*Endora Lion Trucking, Inc.*, No. 5:23-cv-731-JSM-PRL, 2024 WL 3690818, at *2 (M.D. Fla. Aug. 7, 2024) ("Service of process is deemed effectuated on the date the service is received by the Department of State."). Then, as required by the statute, Westchester sent a copy of the service of process documents via certified mail, return receipt requested, to the last known address of Valued Commodities. (Doc. 49-3 at ¶¶ 27-32); *see* Fla Stat. § 48.161(2). Last of all, Westchester filed an affidavit of compliance as required by Fla. Stat. § 48.161(2) that described its efforts to locate and serve Boco before resorting to substituted service.[1] (Doc. 49-3); *see* Fla Stat. § 48.161(2).

As a result, the Court finds that Westchester effected proper substituted service on Valued Commodities on February 18, 2025. Pursuant to Rule 12, Valued Commodities was required to file a response to the complaint within 21 days after being served. That deadline has now passed, and Valued Commodities has failed to make an appearance in this action, file a response to the complaint, request an extension of time to respond to date, or otherwise demonstrate an intent to defend itself in this action. Thus, the entry of clerk's default against Valued Commodities is warranted.

---

[11] The Florida statutes provide that the affidavit of service "must be filed within 40 days after the date of service on the Secretary of State or within such additional time as the court allows." *See* Fla. Stat. § 48.161(2). In this case, Westchester filed the affidavit within the additional time allowed by the Court. (Doc. 44; *see* Doc. 49-3); *Corp. v. Benzer OH 7 LLC*, No. 8:24-cv-1398-WFJ-NHA, 2024 WL 5239616, at *3 n.1, 4 (M.D. Fla. Dec. 27, 2024) (finding that plaintiff's affidavit of compliance filed in connection with its renewed motion for entry of clerk's default on December 12, 2024—77 days after it properly effected service on defendant by serving the Florida Secretary of State on September 26, 2024—was timely filed because plaintiff filed the affidavit of compliance within the additional time allowed by the Court).

**IV.    CONCLUSION**

Accordingly, it is **ORDERED** that:

(1) Plaintiff Westchester Fire Insurance Company's Renewed Motion for Clerk's Default Against Valued Commodities Transportation, Inc. (Doc. 49) is **GRANTED**.

(2) The Clerk is **directed** to enter default against Defendant Valued Commodities Transportation, Inc.

**DONE** and **ORDERED** in Ocala, Florida on June 20, 2025.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties